# SOUTH KNOXVILLE CONTRACTING & CONSTRUCTION CO., INC., v. BRAKEBILL & HAMILTON.

## and

# SOUTH KNOXVILLE CONTRACTING & CONSTRUCTION CO., INC., v. EIGHTY-FOUR TIRE CO.

Eastern Section.   May, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

326

J. C. Wilburn, E. C. Metcalf and W. T. Kennerly, all of Knoxville, for plaintiff in error.

C. Raleigh Harrison, John W. Green and Len G. Broughton, all of Knoxville, for defendant in error.

SENTER, J. These cases were consolidated and tried together before the same jury, but under the separate pleadings. At the conclusion of plaintiff's evidence in the respective cases a motion for a directed verdict by the respective defendants was sustained and both suits dismissed at the cost of plaintiff below.

For convenience the parties will be referred to as in the court below, South Knoxville Contracting & Construction Co., Inc., as plaintiff, and Brakebill & Hamilton and Eighty-Four Tire Company, the respective defendants.

Both suits are actions for damages against the respective defendants for the alleged wrongful and unlawful suing out and levying attachments on property alleged to belong to plaintiff. The facts as disclosed by the record may be summarized and stated as follows: The plaintiff, South Knoxville Contracting & Construction Co., Inc., is a Tennessee corporation, with its offices and situs in Knoxville, Tennessee, with an authorized capital of $10,000. The charter for the corporation was accepted at a meeting held by the corporation in Knoxville, on June 4, 1924. It does not appear that all of the capital stock was subscribed for, but it does appear that $4000 of the authorized stock was subscribed, one-half by G. A. Metcalf and the other one-half by Wm. Hall. Prior to the formation of the corporation G. A. Metcalf and Wm. Hall had been operating as partners under the name and style of South Knoxville Transfer & Coal Company. So far as the record discloses the assets of the corporation consisted of certain trucks, etc., which had formerly been owned by G. A. Metcalf and Wm. Hall, and used in their partnership business when they were operating under the firm name and style of South Knoxville Transfer & Coal Co. While no specific mention is made in the minutes of any of the meetings of the corporation as to the particular property assigned by G. A. Metcalf and Wm. Hall in payment for their respective shares of stock in the corporation, and the only mention made of any assignment is contained in the minutes of June 4, 1924, and from which it appears, as follows:

"Upon motion, duly seconded, G. A. Metcalf and Wm. Hall, each tendered to the corporation their individual shares in the South Knoxville Transfer & Coal Company, a partnership con-

sisting of said Metcalf and Hall, being one-half interest each in said partnership business, in full payment for twenty shares each of the stock in this corporation subscribed to by him (them) subject, however, to adjustment of respective interests between Wm. Hall and G. A. Metcalf and liquidation of indebtedness by Hall on his interest in the aforesaid property.''

But it does appear that the trucks which were subsequently attached in the respective suits by the respective defendants were owned by either Hall or by Hall and Metcalf, and were used by that firm in the conduct of the business conducted in the name of South Knoxville Transfer & Coal Company. It also appears that the interest of Hall in these trucks at the time the corporation was formed, was encumbered by a chattel mortgage in favor of G. A. Metcalf. After the corporation was formed Hall executed a second mortgage on his interest in one of the trucks to secure G. A. Metcalf for $500 which it seems Metcalf had paid out for Hall in liquidating a balance of indebtedness on the trucks under a conditional sales contract.

It also appears that at the first meeting of the directors of the corporation three of the persons who had joined in the application for the charter, and who were three of the Board of Directors, Elizabeth A. Metcalf, Jessie McCracklin Hall, and Edwin C. Metcalf, resigned. This left only G. A. Metcalf and Wm. Hall as the only directors and stockholders, and G. A. Metcalf was elected President, and Wm. Hall Secretary-Treasurer and manager of the corporation. Immediately following this action at the first meeting of the Board of Directors, is the entry on the minutes above quoted with reference to the tendering of G. A. Metcalf and Wm. Hall of their "shares" in the South Knoxville Transfer & Coal Co. It further appears from the meeting of the directors as recorded in the minutes that the salary of the President G. A. Metcalf, was fixed at $25 per month and the salary of Wm. Hall was fixed at $125 per month, to be paid out of the earnings, and the balance of the earnings to be divided between them.

In August, 1924, the two Mack Motor trucks and one Liberty truck were taken to McCreary county, Kentucky, and were there being used in construction work carried on by the plaintiff, South Knoxville Contracting & Construction Co., Inc., according to the averments in the declaration. While these trucks were in McCreary county, Kentucky, attachment suits were instituted by the respective defendants against Wm. Hall, and attachments were issued and levied in the respective cases by the respective defendants on the motor trucks involved, and the ownership of which is claimed by plaintiff. These attachment suits were in the state of Kentucky where the trucks were then being used. After the trucks

had been attached in the respective suits, G. A. Metcalf, through his attorney, notified the attorney for the respective attaching creditors that the trucks belonged to the plaintiff corporation, and that G. A. Metcalf held recorded chattel mortgages on the trucks, which mortgages were recorded in Knox county, Tennessee, where the trucks were at the time the mortgages were executed by Wm. Hall. G. A. Metcalf also filed an intervening petition in one of the attachment suits in which he claimed that he was a necessary and proper party to the attachment suit, and in which petition he set up that he held a chattel mortgage lien on the trucks and set up the execution of the chattel mortgages to him to secure an indebtedness of $1185.80, which indebtedness remained unpaid in whole or in part, and that the defendant Wm. Hall had removed the said trucks from Tennessee to Kentucky without the knowledge or consent of G. A. Metcalf, and that he, Metcalf, was entitled to the possession of said trucks.

Some months later the defendants who were the respective plaintiffs in the attachment suits in Kentucky, took a voluntary nonsuit in the respective attachment cases, and the trucks which had been attached were thereupon released. The two suits in these consolidated cases were instituted by the plaintiff to recover the alleged damages resulting to plaintiff from the alleged wrongful suing out and levying of the attachments on these trucks. In the respective declarations, plaintiff alleges in substance that it was the owner of the two Mack trucks and the Liberty truck and was in possession thereof, and that no one else owned any interest in said trucks, and then proceeds with the averments with reference to the alleged wrongful attachments of said trucks by the defendant, and the resultant damage sustained by plaintiff.

At the trial of the case G. A. Metcalf testified, in substance, that these trucks had been purchased by Wm. Hall, and that he had advanced Hall about $1185 and had taken a chattel mortgage on the three trucks to secure this indebtedness; that this first chattel mortgage was executed prior to the formation of the corporation, and was duly recorded in the Register's office in Knox county, Tennessee; that after the formation of the corporation he took another chattel mortgage on the Liberty truck to secure an indebtedness of $500, and certain other indebtedness, and that this indebtedness accrued to him on account of discharging the conditional sales lien on the truck. He also testified that he and Hall were the stockholders of the corporation, each owning $2000, or twenty shares each of the capital stock of the corporation. The record does not disclose just what assets were turned over by Hall and G. A. Metcalf to the corporation in payment of their respective

shares of stock in the corporation, but G. A. Metcalf testified that the equity in the trucks was turned over or sold to the corporation. A few days after the formation of the corporation the second chattel mortgage, covering on the Liberty truck, was executed by Hall to secure Metcalf, and this second chattel mortgage was also recorded in the Register's Office of Knox county.

Soon after the formation of the corporation the three trucks, the two Mack trucks and the Liberty truck, were sent to McCreary county, Kentucky, under some sort of verbal contract between the South Knoxville Contracting and Construction Co., and the Connelly Construction Company, which latter concern was engaged in building roads in McCreary county, Kentucky. G. A. Metcalf testified that the trucks were sent to Kentucky on a verbal agreement that the Connelly Construction Co., would pay for the use of the trucks so much per hour, and that the South Knoxville Contracting & Construction Co., to pay for the gasoline, oil and operation of the trucks while being so used. It appears that the trucks were taken to Kentucky by Hall with the full consent and approval of G. A. Metcalf, who was the president of the South Knoxville Contracting & Construction Co., and also the mortgagee under the two chattel mortgages.

A considerable portion of the briefs of the respective parties is on the question of the priority of rights between the attaching creditors of Hall and of G. A. Metcalf, the mortgagee under the chattel mortgages. It is the contention of appellant under certain of the assignments of error that the recorded chattel mortgages, recorded in Knox county, Tennessee, where the mortgagor and mortgagee resided, and where the trucks were at the time the mortgages were executed, protected the prior rights of G. A. Metcalf from attachment of these trucks by the creditors of Wm. Hall in the attachment suits in Kentucky, and several cases are cited in support of this contention. If this question is material at all, we think it well settled that where mortgaged chattels are removed from the state in which the property was located at the time the mortgage was executed and recorded to another state, without the consent of the mortgagee, or the holder of the indebtedness secured by the mortgage, that the mortgagee would be protected under his recorded mortgage, even though the mortgage is not recorded in the state to which the property had been removed. This seems to be the settled law under the rule of comity between states.

In the case of Hughes v. Abston, 105 Tenn., 70, it is said:

"A valid mortgage of chattels in another state, which was made and registered in that state, will, in the absence of some

settled rule of public policy forbidding it, be enforced by the courts of this State when the mortgaged property comes within their jurisdiction, to the same extent as a domestic mortgage."

In the case of Newsome v. Hoffman, 124 Tenn., 369, cited and relied upon by appellant, it is said:

"The weight of authority undoubtedly is that when a chattel mortgage is executed in a foreign state, where the property then is, and where the mortgagor resides, and has been duly recorded in that state, pursuant to its laws, and is valid under the laws of that state, the mortgagee, under the rule of comity between states, must be held to have the better right, upon the subsequent removal of the property to another state as against a levying or attaching creditor of, or an innocent purchaser from, the mortgagor in such states into which the property has been so removed, although the mortgage is not recorded in the latter state."

Numerous authorities are cited in the opinion in support of the rule as above stated. However, in the same case it is further stated in the opinion as follows:

"We are of the opinion, however, that the point is material, and that the grace of comity should not be extended to cases wherein it appears that the mortgagee consented to the removal, since in such cases he thereby negligently places it within the power of the mortgagor to deceive and defraud innocent people in the state into which the property may be removed." Citing in support Snyder v. Yates, 112 Tenn., 309, 79 S. W., 796, 64 L. R. A., 353, 105 Am. St. Rep., 941.

In that case the writer of the opinion clearly recognizes the distinction to be made where the removal of the property to another state is done with the approval and consent of the mortgagee.

In the instant case G. A. Metcalf admits that the property was taken to Kentucky with his full consent. Not only does he so testify, but he testifies further that these trucks were taken to Kentucky to be used in hauling road materials under an agreement or verbal contract between the South Knoxville Contracting & Construction Co., of which company he was president, and Connelly Construction Co., and whereby the South Knoxville Contracting & Construction Co., was to receive so much per hour for the use of the trucks. G. A. Metcalf was the president of this corporation, and was also the mortgagee under the chattel mortgages covering on these trucks. However, G. A. Metcalf does not bring these suits, these suits are by the South Knoxville Contracting & Construction Co., Inc., a corporation. This corporation according to the evidence, was the owner of these trucks, but subject to the encumbrance debt secured by the chattel mortgage in favor of G. A. Metcalf.

While it is true G. A. Metcalf testified that the recovery, if any, in these cases, would enure to his benefit, and while it is also true G. A. Metcalf testified that he and Hall were the only stockholders in the plaintiff corporation, yet the fact remains that these trucks had been sold to the corporation in exchange for twenty shares each to Hall and Metcalf of the capital stock of the corporation, but subject to the prior indebtedness thereon.

In the trial of the case below there was no contention made, by the pleadings or otherwise, that the South Knoxville Contracting & Construction Co., was not a legal corporate entity, and no attack seems to have been made on the manner of its organization or the legal status of the corporation. The declarations filed by plaintiff in both of the consolidated cases, sets up and avers the formation of the corporation; the alleged ownership of the three trucks attached in the Kentucky cases; that they were wrongfully attached as the property of Wm. Hall; that the attachments suits resulted adversely to the attaching creditors; the damages alleged to have been sustained by plaintiff on account of the alleged wrongful suing out of the attachments and the levying of the same on the property of plaintiff. To these declarations the respective defendants filed pleas of the general issue of "not guilty of the matters and things and wrongs and negligences therein set out and averred."

At the conclusion of plaintiff's evidence both defendants moved the court for a directed verdict in their favor, respectively, which motions were respectively sustained by the court, and the jury instructed to return verdicts in favor of the defendants in both suits. A motion for a new trial was duly made by the plaintiff in both cases, and was overruled by the court, and the suits dismissed at the cost of plaintiff. From this action of the court in directing verdicts in favor of the respective defendants, and in overruling plaintiff's motions for a new trial, and in dismissing the suits at the cost of plaintiff, the plaintiff has appealed to this court, and has assigned errors.

We have already disposed of one of the questions made by holding that the question with reference to the prior rights of G. A. Metcalf in these trucks by reason of his recorded chattel mortgages, becomes immaterial since G. A. Metcalf is not the plaintiff in these suits. If G. A. Metcalf lost his prior rights under his recorded chattel mortgages, recorded in Knox county, Tennessee, but not recorded in Kentucky, and the property having been removed to Kentucky by his consent. it would not affect the rights of the South Knoxville Contracting & Construction Co., a corporation, as the owner of these trucks at the time the same were attached in the suits against Wm. Hall.

It is insisted by appellee that G. A. Metcalf, as the holder of the indebtedness secured by the respective chattel mortgages, was a

necessary and proper party to these suits, and that the suits of plaintiff must fail because he is not made a party plaintiff.

We do not think this contention can be sustained. These trucks, according to the evidence, belonged to the corporation, but subject to the encumbrance debt in favor of Metcalf. We are of the opinion that the owner of the equitable or legal title would have the right to maintain a suit for the wrongful attachment of these trucks by creditors of Hall. Hall had no interest in the trucks, except he was a stockholder in the corporation. He had sold and transferred his equity in the trucks to the corporation in exchange for twenty shares of the capital stock of the corporation, thereby divesting himself of any interest or title in the trucks. These trucks were not, therefore, subject to attachment by his creditors as his property. The attaching creditors were creditors of Wm. Hall and were not creditors of the corporation.

Appellee further contends that a directed verdict in favor of appellees was properly given by the trial judge, because, according to their contention, these suits are in the nature of suits for malicious prosecution of civil suits, and that plaintiff was not a party to those suits. We cannot agree to this contention. It is probably true that the plaintiff, not being a party to the attachment suits, could not maintain an action against the attachment bonds. But these suits are not against the bonds, but, are suits against the attaching creditors. It is further contended by appellee that the rule applicable to suits for malicious prosecution of a civil suit would apply to this case, and that under this rule it would have to appear that the attaching creditors proceeded without probable cause, and wilfully misused the processes of the law. Under this contention it is insisted by appellees that the attachments were regular, and that the court in which the attachment suits were brought had jurisdiction of the case, and good and sufficient grounds for attachment existed and were shown by the pleadings in the attachment cases. In support of this contention it is insisted by appellees that the cases cited and relied upon by appellant are all cases in which the attachment proceedings were defective, or where the court did not have jurisdiction. It is not the contention of appellant that the attachment proceedings against Hall in the respective cases were irregular, or that sufficient grounds did not exist for the attachment suits against the property of Hall. But it is the insistence of appellant that the attachments were wrongfully and unlawfully levied on property which did not belong to Hall, but which belonged to plaintiff, and that the wrong and vice in the attachments was in wrongfully and unlawfully levying the attachments on property which belonged to plaintiff.

It is not denied that the defendant creditors procured the levying of the attachments on these trucks, and the attachments

were levied on these trucks at the instance of the attaching creditors. We are of the opinion that an action would lie by the owner of the trucks for any damage resulting because of the levying of the attachments on the property of plaintiff. If the attachment suits had resulted in judgments in favor of the attaching creditors, and these trucks had been sold under the orders of the court in the attachment suits, it would have been a conversion of the trucks by the attaching creditors, and the true owner of the trucks could have maintained an action for the value of the trucks so converted. We think it equally true that where these trucks were wrongfully attached, and tied up under the attachment and taken from the possession of the owner, the owner is entitled to maintain an action against the attaching creditors for the wrongful levying of the attachment.

A considerable portion of the brief of appellee is devoted to the question of the failure of plaintiff to intervene in the attachment suits, or to repossess the property in a proper proceedings after the same were attached so as to minimize the damages. We do not think this contention is sound. While it is true plaintiff could have, by giving a proper forth-coming bond, or by replevin, regained the possession of these trucks and could thereby have prevented the damages resulting to it by having the trucks released to it, yet we know of no rule that would require the owner to resort to such proceedings in order to minimize the damages. It does appear from the record that the attaching creditors were promptly advised by G. A. Metcalf and also by the attorney for Metcalf and for the corporation of the true status of the title to these trucks, and that they were not the property of Wm. Hall, and not subject to attachment for his debts. Notwithstanding this prompt notice, the attaching creditors continued to hold the property under the attachments, in the one instance for several weeks and in the other for several months.

It is further contended by appellee that there is no satisfactory evidence of any damage sustained by plaintiff by reason of the attachments having been levied on these trucks; it being the contention in that respect that the evidence is speculative and not sufficient upon which a verdict could be predicated.

G. A. Metcalf testified that at the time these trucks were attached the Connelly Construction Co., was paying 25c per hour for the Mack trucks and 30c per hour for the Liberty truck, but they were not under contract for any specific time. He also testified that the trucks deteriorated greatly in value because they had been exposed to the elements, and when they were finally released they were in a badly damaged condition. He also testified that when he was seeking to have the attaching creditors release these trucks from the attachments, they had an opportunity

of using the trucks in Knoxville in construction work that would have been profitable. While the evidence is rather vague and indefinite as to the actual damages sustained by reason of the wrongful attachment of these trucks, yet there is some evidence that the trucks did have a rental value, and also that there had been depreciation and damage to the trucks while they were held in the custody of the sheriff under the attachments. The fact that they had been wrongfully attached, and the owner wrongfully deprived of the possession, would at least entitle plaintiff to a nominal recovery, in the absence of satisfactory proof of substantial damages. This would entitle the case to go to the jury.

For the reasons above set forth, we are constrained to hold that the learned trial judge was in error in granting the motion for directed verdicts in the respective cases in favor of the respective defendants. It results that the assignments of error are sustained, and the judgments in the consolidated cases, dismissing the respective suits, are reversed and the consolidated cases remanded to the circuit court of Knox county for a new trial.

Owen and Heiskell, JJ., concur.